UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 11-2149(DSD/JJG)

Student Paths, LLC,

Plaintiff,

v. **ORDER**

OnSharp, Inc.,

Defendant.

David A. Davenport, Esq. and Winthrop & Weinstine, PA, 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402, counsel for plaintiff.

John E. Radmer, Esq., Lenae M. Pederson, Esq. and Meagher & Geer, PLLP, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion for partial summary judgment by defendant OnSharp, Inc. (OnSharp) and the motions to exclude expert testimony by OnSharp and plaintiff Student Paths, LLC (Student Paths). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants in part the motion for partial summary judgment and grants in part both motions to exclude expert testimony.

**BACKGROUND**

This business dispute arises from a computer programming error made by OnSharp. OnSharp is a web-based technology company that contracted with Student Paths to process its student data. Sandin

Dep. 17:8-18:7. Student Paths provides student recruiting services to colleges, universities and the armed services (collectively, sponsors). Saunders Dep. 15:8-20. To accomplish this goal, Student Paths collects interest cards from high school students who list the sponsors from which they are interested in receiving materials. Sandin Dep. 15:25-16:9. The cards are sent to Student Paths and forwarded to a third-party vendor that codes the data into electronic format. Saunders Dep. 17:2-14. OnSharp then processes the data and prepares the student's contact information for transmission to sponsors, who use the information to recruit the students. Sandin Dep. 17:19-18:2.

Student Paths has two types of contracts with its sponsors. Under a cost-per-inquiry (CPI) contract, Student Paths is paid a set dollar amount for each inquiry[1] delivered to a sponsor. Saunders Dep. 34:14-18. Under a flat-rate contract, Student Paths receives a set fee from its sponsors regardless of the number of inquiries produced. Id. at 34:34-35:3.

Due to a computer programming error, OnSharp inadvertently deleted duplicate student interest cards in 2008 and 2009. Sandin Dep. 40:15-22. In other words, if a student filled out an interest card on separate occasions, the information from the subsequent cards was deleted and not provided to sponsors. Id. at 41:3-14.

[1] Each student name provided to a sponsor is referred to as an "inquiry." See, e.g., Saunders Dep. 45:17.

The error resulted in 15,281 deleted inquiries. Id. at 16:7-9, 77:19-22. Of the deleted inquiries, 3654 were for sponsors with CPI contracts and 11,627 were for sponsors with flat-rate contracts. Radmer Decl. Ex. E, at 15, ECF No. 19.

In 2010, the first year after the deletions, sponsors renewed their contracts with Student Paths at a rate of 32.56%. Saunders Decl. ¶ 13. In 2011, the renewal rate was 38.58%. Id. Prior to the computer programming error, between 2006 and 2009, 60.36% of Student Paths' sponsors renewed their contracts. Id. ¶ 10. After seeing the decline in renewals, Student Paths altered its business model and invested in additional staff and infrastructure. Saunders Dep. 57:23-58:20. When Student Paths discovered the deletions, it reverted to its prior model and laid off the employees tasked with implementing the new model. Id. at 45:14-46:10.

On July 8, 2011, Student Paths filed suit in Minnesota court, alleging breach of contract, breach of the duty of good faith and fair dealing, negligence, promissory estoppel and unjust enrichment. OnSharp timely removed, and moves for partial summary judgment. Both parties also seek to exclude expert testimony.

## DISCUSSION

### I. Expert Testimony[2]

OnSharp and Student Paths each move to exclude expert testimony. OnSharp moves to exclude the testimony of Student Paths' expert, John Baworowsky. Student Paths moves to exclude the testimony of OnSharp's expert, Joseph Kenyon.

#### A. Standard

"The admissibility of expert testimony in diversity cases is governed by federal law." Unrein v. Timesavers, Inc., 394 F.3d 1008, 1011 (8th Cir. 2005) (citation omitted). Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, the court acts as a gatekeeper to determine "whether the witness is qualified to offer expert testimony."

[2] The court notes that all pre-trial evidentiary rulings are provisional in nature and subject to modification at trial.

Schmidt v. City of Bella Villa, 557 F.3d 564, 570 (8th Cir. 2009) (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993)).

An expert must possess the "knowledge, skill, experience, training or education sufficient to assist the trier of fact." Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006) (citation and internal quotation marks omitted). This standard is satisfied when the expert's testimony "advances the trier of fact's understanding to any degree." Id. (citation and internal quotation marks omitted). Further, Rule 702 "require[s] that the area of the witness's competence matches the subject matter of the witness's testimony." Id. at 1101 (citation and internal quotation marks omitted). "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." Id. at 1100 (citations and internal quotation marks omitted).

The court must also "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Schmidt, 557 F.3d at 570 (citing Daubert, 509 U.S. at 589). The court considers several nonexclusive factors when determining the reliability of an expert's opinion, including:

> (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether the theory has been generally accepted; ... [(5)] whether the

> expertise was developed for litigation or naturally flowed from the expert's research; [(6)] whether the proposed expert ruled out other alternative explanations; and [(7)] whether the proposed expert sufficiently connected the proposed testimony with the facts of the case.

Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686-87 (8th Cir. 2001) (citations and internal quotation marks omitted). This "flexible and fact specific" inquiry allows the court to "use, adapt or reject [the] factors as the particular case demands." Unrein, 394 F.3d at 1011. The proponent of the expert testimony bears the burden of proving its admissibility by a preponderance of the evidence. See Lauzon, 270 F.3d at 686.

**B. Baworowsky**

OnSharp argues that Student Paths' expert, Baworowsky, is not qualified to testify to damages calculations. Baworowsky has a Master's degree in Education, a Ph.D. in Higher Education Leadership and years of employment in the enrollment management field. See Radmer Decl. Ex. E, at 002269, ECF No. 19. Baworowsky, however, has no education or training in accounting or economics. Baworowsky Dep. 29:16-30:9, 35:7-12. Therefore, the motion to exclude Baworowsky's testimony is granted in part. Baworowsky may testify as an expert in enrollment management, but may not testify to matters falling outside of his expertise, including damages

calculations. See Robinson, 447 F.3d at 1101 ("[T]he area of the witness's competence [must] match[] the subject matter of the witness's testimony." (citation omitted)).

**C. Kenyon**

Similarly, Student Paths argues that OnSharp's expert, Kenyon, is not qualified to testify to matters relating to the enrollment management field, including proposed testimony on the cause of the decline in renewals. Kenyon has a Bachelor's degree in Accounting and a Master's degree in Business Taxation. Davenport Decl. Ex. C, app. III, ECF No. 30. Although Kenyon is qualified as a forensic expert, his area of expertise does not extend to enrollment management. See id. As a result, Kenyon may testify to damages calculations and business valuation, but may not testify to specific characteristics or strategies of the enrollment management field. See Robinson, 447 F.3d at 1101.

Student Paths also argues that Kenyon's analysis is selective and incomplete. This argument, however, goes to the weight of his testimony, not to the admissibility of his opinion under Daubert. "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Children's Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 865 (8th Cir. 2004) (citations and internal quotation marks omitted). Kenyon's proposed testimony does not rise to the level of "fundamentally unsupported." Moreover, at trial, Student Paths

will have the opportunity to cross-examine Kenyon, and it is "within the province of the jury to evaluate issues of fact and credibility." Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 544 (8th Cir. 2006). Therefore, the motion to exclude Kenyon's testimony is granted in part, and he may not testify to matters falling outside his expertise of damages calculations and business valuation.

**II. Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite

"particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**A. Lost Profits**

OnSharp argues that, as a matter of law, Student Paths cannot recover damages for the decline in renewal rates of the flat-rate contracts.[3] To prove lost profits, a plaintiff "must demonstrate by a preponderance of evidence that (a) profits were lost, (b) the loss was directly caused by the breach ..., and (c) the amount of such causally related loss is capable of calculation with reasonable certainty rather than benevolent speculation." Hinz v. Neuroscience, Inc., 538 F.3d 979, 984 (8th Cir. 2003) (second alteration in original) (citation and internal quotation marks omitted) (applying Minnesota law). OnSharp argues that (1) Student Paths cannot prove that the deletions directly caused the decrease in renewals and (2) any damages would be impermissibly speculative.

---

[3] OnSharp moves for summary judgment only as to lost profits for the flat-rate contracts. OnSharp does not move for summary judgment as to Student Paths' claim relating to the CPI contracts. Def.'s Mem. Supp. Summ. J. 23.

**1. Causation**

In order to recover lost profits, a plaintiff must adduce evidence "sufficient to raise a reasonable inference that its lost profits were caused by" the defendant. LeSueur Creamery, Inc. v. Haskon, Inc., 660 F.2d 342, 351 (8th Cir. 1981) (applying Minnesota law). The lost profits must be "directly caused by the breach." Hinz, 538 F.3d at 984 (citation and internal quotation marks omitted).

OnSharp argues that Student Paths has not introduced any evidence that the non-renewing sponsors would have renewed had the inquiries not been deleted. Causation, however, may be demonstrated through circumstantial evidence. Quality Bus. Forms of Minneapolis, Inc. v. Secured Choice, Inc., No. C1-02-1764, 2003 WL 21525249, at *2 (Minn. Ct. App. July 1, 2003). Student Paths has introduced ample circumstantial evidence - its business records, records of communication with sponsors, historical renewal rates and expert testimony from an enrollment management expert - from which a reasonable jury could find the requisite causation.

OnSharp also argues that other factors, such as the economic recession and budgetary concerns, caused the decline in renewals. For Student Paths to recover lost profits, however, the deletions need not be the sole cause of the loss. Id. at *3. Moreover, Baworowsky stated that, in his experience, colleges and universities increase recruiting spending during a recession and

that the economic downturn cannot account for the decreased renewal rate. See Davenport Decl. Ex. A, at 12, ECF No. 30. As a result, a reasonable jury could find that the non-renewing sponsors would have renewed but for OnSharp's programming error.

### 2. Certainty of Damages

OnSharp next argues that Student Paths cannot recover damages for lost profits because any such damages are impermissibly speculative. "There is no general test of remote and speculative damages, and such matters should usually be left to the judgment of the ... court." Jackson v. Reiling, 249 N.W.2d 896, 897 (Minn. 1977) (citation omitted). To recover, a plaintiff need only prove the amount of lost profits to a "reasonable probability." Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 920 (Minn. 1990). In other words, "[o]nce the fact of loss has been shown, the difficulty of proving its amount will not preclude recovery so long as there is proof of a reasonable basis upon which to approximate the amount." Leoni v. Bemis Co., 255 N.W.2d 824, 826 (Minn. 1977) (citation omitted).

As already discussed, a reasonable jury could find that OnSharp was directly responsible for Student Paths' lost profits. If a jury found that OnSharp caused the loss, Student Paths' business records, past profits and witness testimony would provide a reasonable basis for a jury to approximate damages. As a result, OnSharp's argument that damages are impermissibly speculative is

unavailing. Therefore, summary judgment on Student Paths' claims for lost profits is not warranted.

**B. Compensatory Damages**

Student Paths also asserts a claim for compensatory damages, alleging that it incurred additional costs to alter its business model after seeing a decline in inquiries. In support, Student Paths' publisher Chris Wills states that the decline in inquiries triggered a change in business strategy and resulted in the hiring of new staff. Wills Dep. 30:13-23. OnSharp responds that the deletions could not have been the cause of these changes, as Chief Academic Officer Todd Bloom was hired to implement the new model in June 2008, prior to when the effect of the error was felt. Radmer Decl. Ex. K, ECF No. 24. Given this factual dispute over the timing of the change, however, a reasonable jury could determine that the declining inquiries triggered the shift in strategy and could award compensatory damages to Student Paths. Therefore, summary judgment as to the claims for compensatory damages is not warranted.

**C. Quasi-Contract Claims**

OnSharp argues that summary judgment is warranted on Student Paths' claims for breach of the implied covenant of good faith and fair dealing, unjust enrichment and promissory estoppel. These claims are not viable when an express contract exists. See In re Hennepin Cnty. 1986 Recycling Bond Litig., 540 N.W.2d 494, 503

(Minn. 1995) ("[A] claim for breach of an implied covenant of good faith and fair dealing implicitly assumes that the parties did not expressly articulate the covenant allegedly breached." (citation omitted)); U.S. Fire Ins. Co. v. Minn. State Zoological Bd., 307 N.W.2d 490, 497 (Minn. 1981) ("[E]quitable relief cannot be granted where the rights of the parties are governed by a valid contract." (citations omitted)). Because the parties agree that a contract existed, summary judgment on these claims is warranted.

**D. Attorneys' Fees**

Finally, OnSharp argues for summary judgment on Student Paths' claim for attorneys' fees. Student Paths responds that foreclosing fees at this stage in the proceedings is premature. The court agrees. "Judges have ample power to award attorney's fees to a party injured by a lawyer's fraudulent or vexatious litigation tactics." Hemmingsen v. Messerli & Kramer, P.A., 674 F.3d 814, 820 (8th Cir. 2012) (citations omitted); see also 28 U.S.C. § 1927 (allowing court to impose attorneys' fees if counsel "multiplies the proceedings in any case unreasonably and vexatiously"); Fed. R. Civ. P. 11 (providing for imposition of attorneys' fees). Although there is no indication that attorneys' fees are warranted at this time, the court finds no reason to prospectively limit its ability to award relief. Therefore, the motion for summary judgment on the claim for attorneys' fees is denied.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion to exclude expert testimony by defendant [ECF No. 16] is granted in part;

2. The motion to exclude expert testimony by plaintiff [ECF No. 26] is granted in part.

3. The motion for partial summary judgment [ECF No. 21] is granted in part, consistent with this order;

Dated: March 12, 2013

s/David S. Doty
David S. Doty, Judge
United States District Court